IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| **Ronnie G. Credille**, ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO.** |
| ) | **6:09-cv-0980-KOB** |
| ) | |
| **MICHAEL J. ASTRUE**, ) | |
| **Commissioner of the Social**, ) | |
| **Security Administration** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

### I. INTRODUCTION

On September 18, 2007, the claimant, Ronnie G. Credille, applied for disability insurance benefits under Title II, and supplemental security income under Title XVI of the Social Security Act. (R. 12). Claimant initially filed a disability report on October, 4, 2007. The claimant alleges disability beginning on May 31, 2007 (amended date) because of damage to his hand, trouble breathing caused by a wire lodged in his lung; COPD; degenerative disk disease; spinal stenosis; bulging disk; and chronic kidney disease, including kidney stones. (R. 65; 28; 87; 225; 228; 241). The Commissioner denied the claim on December 14, 2007. (R. 12). Claimant then filed a request for reconsideration, which the ALJ treated as a request for a hearing, on April 24, 2008. (R. 28; 24). Randall C. Stout, the Administrative Law Judge (ALJ), held a hearing in Florence, Alabama, on October 17, 2008. (R. 12). The ALJ denied both claims in an order dated February 18, 2009. (R. 20). For the reasons stated in this Memorandum Opinion, the court finds

1

that the decision is due to be reversed and remanded.

## II. ISSUES PRESENTED

Whether the ALJ showed "good cause" in discounting the findings of the treating physician.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No... presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. The Commissioner's factual determinations, however, are not reviewed *de novo*, but are affirmed if supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 401 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but also must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986).

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

An ALJ must accord substantial or considerable weight to the opinion of a treating physician unless "good cause is shown to the contrary." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960 (11th Cir. 1985). The ALJ must "specify what weight is given to the opinion of the treating physician and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor*, 786 F.2d 1053. Courts in this circuit have found good cause where the treating physician's opinions were not supported by evidence or were merely conclusory, *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987); where the evidence supported a contrary finding, *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th

Cir. 1997); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); or where the opinion was inconsistent with the physician's own records, *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991).

## V. FACTS

Claimant was born on January 21, 1959 and was 50 years old at the time of the hearing. (R. 39). He completed the 8th grade and can read, but writes poorly. (R. 251-252). His past work experience includes employment as a material handler, furniture assembler, plumber and water check, all of which are low-end, semi-skilled work with medium to heavy exertional level. (R.41) Claimant alleges that he is unable to work because of arthritis, degenerative disk disease and stenosis of the cervical and lumbar spine (damage to intervertebral disks that can cause pain and weakening of the back and lower extremities), spinal stenosis (narrowing of the spinal canal that can cause compression of th spinal cord and nerves), chronic kidney disease including kidney stones and hydronephrosis (distension and dilation of the renal pelvis and calyces, usually caused by obstruction of the free flow of urine from the kidney and swelling of the urethral tube), trouble breathing because of lung injuries, and damage to his right hand. (R. 225-226; 228-229). Also, the claimant is 5' 4" and weighs 195 pounds, according to his disability report. (R. 65).

*Medical History*

Between February 15, 2002 and August 7, 2008, Claimant visited Dr. Morrow, a general practitioner, his treating physician, 17 times, complaining of various ailments. The records for 14 of those occasions show reports of numbness in the back or back pain. Seven of Dr. Morrow's records contain claimant's self-assessment of his level of pain, varying, on a scale of 1 to 10, from 0-4 with medication and 6-8 without. The pain levels did not show gradual elevation or

diminution. Claimant has been prescribed a narcotic pain reliever, either Vicoprofen or Lortab, since January 11, 2007. On September 9, 2004, the claimant underwent an MRI of the lumbar spine that showed degenerative disk disease of the T12-L1 and L5-S1 vertebrae, as well as posterior bulge of the L5-S1 vertebrae. (R. 207). The physician reading the MRI, Dr. Crandell, reported that the claimant's condition did not "appear to be significant yet." *Id*. A CT scan of the chest taken the same day also revealed degenerative disk disease. *Id*.

The claimant also has an extensive history of kidney disease. On October 23, 1991, claimant was admitted to the hospital and treated for a kidney stone. A CT scan of the abdomen pelvis on April 22, 2005 showed a "right ureteral calculus," or kidney stone, and one on May, 31, 2007 showed a kidney stone and "severe right hydronephrosis." The record shows that claimant visited Dr. Pritchard on June 5, 2007 based on this diagnosis and reported 10 prior occasions of kidney stones. (R. 143). The doctor ordered surgery to remove the stone, which was completed on June, 12, 2007. (R. 149).

The record also shows evidence of a hand injury in February 2006, resulting from a work-related injury in which two metal bars fell on his hand. (R. 127). The treating orthopedic surgeon, Dr. Fisher, reported on May 16, 2006 that the claimant stated his hand did not hurt, and found that he was at maximal medical improvement and could return to work without restrictions. (R. 126).

On November 26, 2007, the claimant visited a consultative physician, Dr. Woodfin, a general practitioner, at the request of the Social Security Administration. (R. 159-161). Dr. Woodfin reported that the claimant's chief complaint on the visitation was his "kidneys." Assessing the claimant's general appearance, the doctor observed that he did "not act like

someone with low back pain" and listed a number of bases for this conclusion, including that "no assistive device was brought"; that "[h]e arises from sitting and sits down in a normal fashion at normal speed"; "[m]oves about the room without apparent physical limitation"; and "goes from sitting to supine to sitting by contracting the abdominal musculature, not by turning to one side to let himself up or down as someone with a bad back problem might do."  (R. 160). Dr. Woodfin next noted a "slight tenderness in the area of complaint," his spine. (R. 161).  The consultative physician's summary concluded that claimant's problems "would seem to be an avoidance-type back; e.g., if he avoids frequent bending and heavy lifting he should get along fairly well." (R.161).

In a deposition taken October 7, 2008, claimant's treating physician, Dr. Morrow, testified in more depth to a number of the claimant's alleged ailments.  In response to the attorney's questioning, the physician testified that the claimant has "significant problems with arthritis and degenerative disk disease, both in his lumbar and cervical spine"; that, though not verifiable because of a lack of diagnostic testing, the claimant "needs surgery for his back and possibly his neck"; that he "has had kidney stones, the last one in '07, where he had significant blockage in his kidney with hydronephrosis" and "a chronic kidney stone problem"; that the MRI and CT scan taken in September 2004 showed "degenerative disk disease at T12-L1 and L5-S1" "bulging disks at L5-S1," "bulging disks at L5-S1," "and "small spinal canal in the lower region"; that the complaints made by complainant corresponded to the conditions revealed in these tests, particularly spinal stenosis; and that the condition of spinal stenosis was one that would be expected to have progressed from the time of those exams. (R. 225-32).

Finally, the same day, Dr. Morrow filled out a Functional Capacity Assessment based on

his clinical evaluation of the patient. (R. 235)  He reported having seen claimant between 30-40 times. *Id.*  His opinion was that, in an 8 hour workday, claimant could sit for a total of 2 hours, stand and/or walk for a total of 2 hours, or lay recumbent for 4 hours. *Id.*  In addition, the doctor concluded that claimant could occasionally lift up to 10 lbs, but could never lift more. (R. 236) Dr. Morrow concluded that claimant would be expected to miss, "even under the best circumstances" at least 30 days of work a year. *Id.*

*ALJ Hearing*

After the Commissioner denied the claimant's request for supplemental security income, the claimant filed a request for reconsideration and received a hearing before an ALJ. (R. 28; 238-273). At the hearing, the claimant and a Vocational Expert (VE), Thomas M. Elliott, testified.  (R. 12). The claimant's attorney summarized his back injuries and kidney stones and discussed the resulting pain. (R. 241).  The ALJ reported that he reviewed his records and did not "see any noted side effects" of patient's medication. (R. 244).

The ALJ reviewed the claimant's MRI of September 2004. (R. 247). The claimant testified about his limited ability to use his hand as a result of the injury, that he could "do nothing with it." (R. 254).  He also testified that he had neck surgery in 1994, that his back had been bothering him for a number of years and that it had gradually worsened. (R. 255-56). According to claimant, his back bothered him more than his neck, and on a scale of 1-10, the pain never got lower than a 5. (R. 257).  When asked to explain why the medical records from Dr. Morrow showed his pain level to be as low as a 2, he testified that he "must have misunderstood the question." (R. 258). Next, in response to questioning from the ALJ, claimant testified that he took 4 Lortabs a day that helped with the pain, but that after 3 hours they would

wear off and his pain level would go back up as high as an 8. *Id*.

Claimant testified that because of his back pain he could sit for as long as an hour and a half, stand for 45 minutes and walk for an hour-and-a-half to two hours. (R. 259). During an average 8 hour day, he reported having to lie down two to two-and-a-half hours; on his worse day, he would have to lie down four to five hours. (R. 260). Claimant testified that he could occasionally lift a "25 pound bag of dog food." *Id.* Finally, in addition to his back problem, claimant testified to having frequent kidney stones, averaging one a year for the past 12 years, which would keep him out of work for up to a week. (R. 261-62).

At the hearing, the ALJ posed a number of hypothetical questions based on claimant's medical condition to a Vocational Expert (VE), Thomas Elliott. The VE testified that, according to the treating physician's functional capacity assessment, the claimant could not perform his past work or any other gainful employment. (R. 268).

The ALJ then posed a second hypothetical question that assumed the claimant could occasionally lift and carry 20 pounds and could frequently carry and lift 10 pounds. The VE testified that based on this second hypothetical, the claimant could do some light work positions, such as inspector or counter clerk, both of which exist in sufficient numbers in the national economy. (R. 269-70).

Third, the ALJ asked the VE whether claimant could work if he amended the hypothetical by moving the "overall assessment down to sedentary work," but assuming full use of his hand. The VE testified that a significant number of jobs exist that the claimant could perform, such as rotor assembler or surveillance system monitor. (R. 271)

Finally, the VE testified that, if claimant had a pain level of 7-9, which would limit his

ability to pay attention, if he had to leave work to lie down frequently, or if he missed 30 or more days of work a year, he would be unable to find gainful employment.

*ALJ Decision*

On February 19, 2009, the ALJ issued a decision finding the claimant was not disabled under the Social Security Act. (R. 12).  First, the ALJ found that the claimant had not engaged in substantial gainful activity since the alleged onset of his disability. (R. 14).  Next, the ALJ found that the claimant's degenerative disk disease of the lumbar and thoracic spine, with bulging discs at L5-S1 and some stenosis at L4-5, his status post cervical disc surgery, and his obesity were severe impairments. *Id.*  He also found, however, that the history of finger injury, which the orthopedic surgeon described as completely healed, and the allegations of kidney stones, which the ALJ noted were episodic, were not severe impairments. (R. 15).  The ALJ found that those impairments did not individually or in combination meet any of the listed impairments in the Code of Federal Regulations and were not severe enough to support a claim of disability. (R. 16). The ALJ ultimately found that the claimant had the following residual functional capacity (RFC):

> He can perform a reduced range of light work, occasionally lifting and carrying 20 pounds and frequently lifting and carrying 10 pounds.  He cannot perform repetitive or constant lifting, climbing, bending, or carrying (but frequently can perform these activities).  He cannot perform overhead lifting. *Id.*

In making this determination, the ALJ reasoned that, though "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms... [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R.16). To support this conclusion, the ALJ referenced the treatment

records of Drs. Morrow and Woodfin, and determined that "the medical records fail to document a sufficient objective basis to accept the claimant's allegations." (R.17).

First, the ALJ noted that Dr. Morrow's records indicate that claimant's level of pain varied from a zero, on medication, according to the report of August 16, 2007, to an eight without medication. (R. 188). The ALJ concluded that, "on the basis of these records...it is obvious that the claimant's medications do reduce pain, and the record shows no side effects resulting from the medication." (R. 17). The ALJ also took note of the inconsistency between the claimant's alleged pain as reported in the doctor's records and his assertion, at the hearing, that his pain was never less than a five. *Id*. Next, the ALJ discussed claimant's use of medication. He reasoned that because Dr. Morrow prescribes 56 Lortabs at a time, and if, as claimant testified, he takes 4 a day, they would only last 14 days, "they must not be taken as often as alleged at the hearing." *Id*. Apparently assuming that the prescription would be made on a monthly rather than bi-monthly basis, the ALJ found that this discrepancy supported a ruling that the claimant was not credible regarding the extent of his impairments.

The ALJ also found that Dr. Morrow's disabling assessment was inconsistent with Dr. Woodfin's exam. Dr. Woodfin reported that the claimant's ability to lift and carry were "per his admission," and that "there are no stated limitations regarding sitting, being on his feet, or walking." (R. 18). The ALJ summarized at length Dr. Woodfin's examination, including his final conclusion that claimant's condition "would seem to be an avoidance-type back; e.g., if he avoids frequent bending and heavy lifting he should get along fairly well." *Id*. Next , the ALJ stated that he had considered Social Security Regulation 02-01p, which holds that obesity can cause or contribute to limitations, but found that the record did not show any limitations

attributed to his weight of 195 pounds. *Id*.

Finally, as a result of his functional capacity assessment that the claimant has the ability to "perform the full range of light work," the ALJ determined that, though the claimant could not perform any of his past work, he was able to perform some work that exists in significant numbers in the national economy. (R. 19).

## VI. DISCUSSION

The claimant argues that the ALJ's finding is unsupported by substantial evidence, is based on a misapplication of the law and fails properly to consider and give appropriate weight to the opinion of the treating physician. For the reasons stated below, this court finds that the ALJ has failed to articulate good cause for rejecting the treating physician's assessment.

Case law in this circuit requires that the Commissioner accord the opinions of the treating physician substantial or considerable weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). Absent a showing of good cause, the commissioner cannot discount the treating physician's opinions. *Id*. Courts in this circuit have found good cause where the treating physician's opinions were not supported by evidence or were merely conclusory, *Schnorr*, 816 F.2d at 582; where the evidence supported a contrary finding, *Lewis*, 125 F.3d at 1440; *Phillips*, 357 F.3d at 1240; or where the opinion was inconsistent with the physician's own records, *Edwards*, 937 F.2d at 583.

When discounting the opinion of a treating physician, the ALJ must "clearly articulate" his reasons for doing so. *Phillips*, 357 F.3d at 1241. Clear articulation of reasons entails, in part, that the ALJ "state specifically the weight accorded to each item of evidence and why he reached that decision." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Where an administrative

agency reaches its conclusion by "focusing upon one aspect of the evidence and ignoring other parts of the record ...we cannot properly find that the administrative decision is supported by substantial evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). For the ALJ to state that he "has carefully considered all the testimony at the hearing, the arguments made, and the documents described in the List of Exhibits" where he does not state the weight accorded to relevant evidence is insufficient. *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). Failure to articulate the reasons for giving less weight to the opinion of the treating physician is reversible error. *MacGregor*, 786 F.2d at 1053.

To discount the opinion of a treating physician, an ALJ must at least address any treatment history and objective medical evidence on which that opinion is based. Dr. Morrow's opinion as manifested in his Functional Capacity Assessment (FCA) and deposition testimony rests on extensive treatment history and objective medical evidence. Claimant has seen Dr. Morrow 30 to 40 times, and consistently complained of back pain to him between 2002 and 2008. The medical record also reflects that Dr. Morrow prescribed claimant a narcotic pain reliever since at least January 11, 2007. Dr. Morrow's opinion is also supported by objective medical evidence, such as an MRI, taken on September 9, 2004, that showed degenerative disk disease, bulging disks and spinal stenosis. (R. 207). A CT scan of his chest taken the same day reflected "degenerative changes of the lumbar spine with spinal stenosis." *Id*. In his deposition testimony, Dr. Morrow opined that because those tests were four years old, the claimant's degenerative condition "would be expected to progress." (R. 230). He further stated that claimant needed new MRI's because he believed that "[claimant] needs surgery for sure in his back and possibly in his neck currently." (R. 225). Finally, Dr. Morrow observed that the fact

that the radiologist reading the CT scan observed the problems with claimant's back corroborated their severity, because it is "extremely unusual for the radiologist to read that much about the spine." (R. 229).

Dr. Morrow also completed a Functional Capacity Assessment the same day as the deposition. In this FCA he indicated that, in an eight hour work day, claimant could only sit continuously for two hours, stand and/or walk for two hours, and lie recumbent for 4 hours. (R. 236). The FCA also reflected Dr. Morrow's opinion that claimant could only occasionally lift up to 10 pounds, and as a result of his ailments taken in combination, would be expected to miss 30 or more days per year "even under the best circumstances." *Id*.

The ALJ failed to address and discount the above medical evidence. While his opinion records some of the above information in his summary of medical treatment, he does not discuss or explain his rejection of it in the analysis section. His assertion that he "has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" is not alone sufficient. See *Ryan*, 762 F.2d at 942 (a statement that the ALJ has considered all of the relevant evidence is not sufficient where he does not state the weight accorded to the evidence). Simply listing the medical history of a treating physician falls short of the legal requirement that the ALJ state the weight given to the opinion of the treating physician and his reasons for doing so. *Cowart*, 662 F.2d at 735 (the ALJ must "state specifically the weight accorded to each item of evidence and why he reached that decision."). Similarly, mere recitation of the consultative physician's examination, without more, is not a "clear articulation" of "good cause" for rejecting the opinion of a treating physician.

First, the ALJ neglected to discuss the objective medical evidence of the MRI and CT scan or the physician's opinions based on them. Rather, he simply listed these findings and noted that the studies that showed degenerative disk disease were "relatively old." (R. 15). When, as here, the ailment in question is one that can be expected to progress over time, the age of the study tends to support, rather than contradict, the claimant's position. Further, Dr. Morrow's direct testimony, including his medical opinion that the claimant currently needed surgery on his back "for sure," supports the position that the condition is one that is likely to have progressed. (R. 225). An ALJ cannot provide good cause for dismissing the opinion of a treating physician without discussing the objective medical evidence on which it is based.

The ALJ also failed to address the other significant portions of Dr. Morrow's deposition testimony and FCA, such as the statement that significant spinal stenosis, as evident from the MRI and CT scan, is likely to cause "dysfunction, loss of muscle power, loss of strength, loss of endurance and more numbness and more pain." (R. 233). This evidence supports Dr. Morrow's conclusion in his FCA that claimant would miss 30 or more days of work per year under the best circumstances. The VE stated that this degree of absenteeism would preclude all substantially gainful employment regardless of other maladies. The ALJ, then, rejected the treating physician's testimony about medical limitations that would conclusively preclude employment without stating sufficient reason.

Moreover, Dr. Woodfin's examination does not provide evidence that "conclusively counters" that of the treating physician, *Schnorr*, 816 F.2d at 582 (ALJ did not provide good cause for discounting a treating physician's opinion where, considering the record as a whole, the medical evidence did not conclusively counter the opinion of the treating physician). The

14

former's observation that the claimant "sat for 35 minutes...without getting up and moving around" does not contradict Dr. Morrow's assessment that the claimant cannot sit for more than one to two hours at a time.  Neither does the consultative physician's observation that the claimant "does not act like someone with low back pain" conclusively counter the treating physician's testimony.  Dr. Woodfin, a general practitioner and not an orthopaedic specialist, based his other assertions on similarly superficial observations, such as that claimant "[m]oves about the room without apparent physical limitation."  Even the consultative physician's most salient observation, that claimant "goes from sitting to supine to sitting by contracting the abdominal musculature, not by turning to one side to let himself up or down as someone with a bad back problem might do" does not rise to the level of good cause when the ALJ has not dealt with contradictory objective medical evidence.  In fact, the record does not indicate, and the ALJ neglected to inquire, whether at the time of his consultative examination the claimant was medicated, and if so, how that would affect the doctor's conclusions.  Finally, the consultative physician's record also states that the examination was "pain free except on flexion of the spine." However, claimant's primary position is precisely that movement of the spine causes his pain; therefore, this observation actually supports his application.  The ALJ, then, failed to demonstrate that the examination of consultative physician provides good cause for dismissing the opinion of the treating physician.

      The ALJ's decision did not address the above medical evidence that supports the claimant's position, and the evidence he provided in support of his denial falls short of a clear articulation of good cause.  Other portions of his opinion also suggest he failed adequately to consider the record as a whole, but considered only evidence that supported denial. See

*McCruter*, 791 F.2d at 1548 (Where an administrative agency reaches its conclusion by "focusing upon one aspect of the evidence and ignoring other parts of the record ...[the court] cannot properly find that the administrative decision is supported by substantial evidence."). During the hearing, the ALJ stated that he was "just quickly looking at the deposition" and "was tempted to...reschedule [the hearing]" because he only received it that day. (R. 241). Also, while the claimant's original disability report listed "dizziness" as a side effect of his pain medication, the ALJ wrote that "the record shows no side effects resulting from the medication." (R. 17; 69). Indications that the ALJ has not considered parts of the record and important factual misstatements about the record cast doubt on the thoroughness of the ALJ's review. Even had he adequately scrutinized the record, however, the simple repetition of a consultative physician's finding without discussion of a treating physician's opinions or relevant objective evidence does not constitute the requisite clear articulation of good cause.

  Where a treating physician's opinion is supported by objective medical evidence, an ALJ must address that evidence to support a finding that a claimant is not disabled. The ALJ here has not done so. He has not shown that the treating physician's opinions are conclusory, *Schnorr*, 816 F.2d at 582; that they are inconsistent with his own records, *Edwards*, 937 F.2d at 583; or that, taken as a whole, the evidence supported a contrary finding, *Lewis*, 125 F.3d at 1440. Scrutinizing the record "in its entirety to determine the reasonableness of the [Commissioner]'s factual findings," *Walker*, 826 F.2d at 999, looking also to those parts of the record that detract from the evidence relied on by the ALJ, *Hillsman*, 804 F.2d at 1181, this court finds that the ALJ has failed clearly to articulate good cause for not according substantial weight to the opinion of the treating physician.

## V. CONCLUSION

For the reason stated above, the court concludes that the decision of the Commissioner does not clearly articulate good cause for disregarding the opinion of a treating physician. Therefore, the courts reverses the decision and remands to the ALJ to determine whether the claimant is entitled to Disability Insurance Benefits or Supplemental Security Income Payments.

The court will enter a separate Order consistent with this opinion.

DONE and ORDERED this 12th day of August, 2010.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE